## The Illinois Central Railroad Company

### *v.*

### Cornelius Reardon, Admr.

*Filed at Ottawa October 11, 1895.*

1. Practice—*question of sufficiency of evidence must be raised at trial.* In the absence of a demurrer to the evidence or a request to the court to take the case from the jury, the question of the sufficiency of the evidence to sustain the verdict becomes one of fact, only, on which the Appellate Court's decision is final.

2. Verdict—*sufficiency of verdict in action on the case.* While the proper verdict against a defendant in an action on the case is a finding of "guilty," a verdict which "finds the issues in favor of the plaintiff," assessing damages, in pursuance of an instruction of the court as to form, is equivalent to a verdict of guilty.

3. Measure of Damages—*to father and next of kin for causing son's death.* Loss by a father of the wages of a minor son from the date of his death to the time when he would have come of age is not the measure of damage for negligently causing such son's death, and an instruction making such loss of wages unduly prominent and ignoring other elements of damage is properly refused.

4. WITNESSES—*administrator who is plaintiff may testify in his own behalf.* An administrator suing for the negligent death of his intestate is, under the statute, a competent witness in his own behalf.

5. FELLOW-SERVANTS—*question of the relation of servants one of fact.* Whether the relation of fellow-servants existed between different employees at the time of an injury is one of fact, upon which the judgment of the Appellate Court, in the absence of any rulings of law upon the question, is conclusive.

*Illinois Central Railroad Co.* v. *Reardon,* 56 Ill. App. 542, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of JoDaviess county; the Hon. JAMES SHAW, Judge, presiding.

R. H. McCLELLAN, for appellant.

D. & T. J. & J. M. SHEEAN, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

This was an action on the case, brought by Cornelius Reardon, administrator of the estate of Frank Reardon, deceased, to recover damages for the death of the plaintiff's intestate. The case was tried on a plea of "not guilty," and the jury, by their verdict, found the issues in favor of the plaintiff, and assessed his damages at $2300. For that sum and costs the court, after overruling the defendant's motion for a new trial, gave judgment in favor of the plaintiff. That judgment has been affirmed by the Appellate Court on appeal, and this appeal is from the judgment of affirmance.

Frank Reardon, the plaintiff's intestate, was killed August 15, 1892, while endeavoring to couple cars in the defendant's yard, in the city of Freeport. The switch yard where the accident occurred contains some eleven tracks, built on a descending grade of over twenty feet to the mile, so that unsecured cars running from one end of the yard to the other would, from their own weight, attain considerable speed. Prior to August 13, 1892, two engines and their crews, each consisting of a foreman and

two helpers, attended to the switching in the yard.   On the evening of that day each crew seems to have been reduced to a foreman and one helper, and for that reason the foreman of each crew refused to go out with his engine.    William J. Reardon, a brother of the deceased, was one of the helpers and joined in the refusal.   He and his foreman were thereupon discharged from the defendant's service by the general yard-master.   The foreman of the other engine was then given a full crew, and to make up that crew, Frank Reardon, then a little less than nineteen years of age, was employed as helper.   He worked that night and the night following, and while in the performance of his duties on the third night met with the accident which caused his death.   In the morning of the day on which he was killed there came to the defendant's yards at Freeport a car loaded with assorted timbers, the property of the defendant, the timbers being loaded on a coal car, without any means for preventing their shifting about.   The timbers had shifted so as to extend over one end of the caboose to which the car was attached, and the car was thereupon delivered in the yard for the purpose of reloading.   During the day it was reloaded and returned back into service, but no means were used to prevent the timbers from again shifting, and in the process of handling the car that evening the timbers were again shifted, or moved from their place, so as to extend over the end of the car in such a way as to make the operation of coupling on to another car extremely dangerous.   While the car was in this condition, standing on the track, the deceased attempted to couple it to some cars which were kicked up against it. He was on the cars being kicked up the track, and when approaching the car loaded with lumber he jumped off and ran ahead to make the coupling, and while attempting to couple the cars together he was caught by the projecting timbers and killed.

The negligence charged against the defendant consisted, first, in loading the car with timbers in the careless and dangerous manner above stated, and in attempting to transport the timber in that condition; second, in employing the deceased, a minor, unfamiliar with the dangers surrounding the situation, and without the consent of his parent or guardian; and third, in failing to instruct him as to the unusual danger of the work which he was thus employed to do. On the other hand, the defendant seeks to charge deceased with contributory negligence in getting off the car on which he was riding, and running ahead for the purpose of effecting the coupling of the cars, and in the manner in which he attempted to couple them together.

Whether the defendant is, under the evidence, chargeable with negligence as is alleged, or the deceased with contributory negligence, are questions of fact, as to which the decision of the Appellate Court is conclusive. These questions, therefore, are not open for decision in this court. We are therefore compelled to assume that the defendant is shown by the evidence to have been guilty of negligence causing the death of the deceased as charged, and that the deceased was free from contributory negligence.

The learned counsel for the defendant, while admitting the conclusiveness of the judgment of the Appellate Court as to the facts, insists, notwithstanding, that it is proper for this court to consider all the evidence, and if it should come to the conclusion that the facts as found by the Appellate Court do not constitute a cause of action, the judgment should be reversed. We are a little at a loss to know precisely how counsel intends to be understood. The facts which we must assume have been found by the Appellate Court are those ultimate facts upon which the verdict of the jury necessarily rests, namely, that the deceased was killed by the negligence of the defendant in manner and form as charged in the

declaration, and that he was free from contributory negligence. But the reasoning of counsel, if we understand him, amounts to this: that we should look at the evidence, and if, in our opinion, it fails to warrant a finding of the ultimate facts above stated, we should hold that no cause of action is shown, and reverse the judgment for that reason. To do this would, in all its essential features, be an adjudication upon the facts,— a thing not within our jurisdiction. The point as to whether there was any evidence sufficient to warrant a verdict for the plaintiff might perhaps have been presented in the record, so as to be open for consideration here, by a demurrer to the evidence, or its equivalent—a request to the court to take the case from the jury and instruct them to find a verdict for the defendant. No such instruction, however, was asked, and the question as to the sufficiency of the evidence can, in no point of view, be regarded as presenting anything but a question of fact, upon which the decision of the Appellate Court is final.

Some complaint is made of the rulings of the court in the instructions to the jury, and it is also claimed that the verdict, in form, is insufficient to warrant the entry of judgment thereunder. The only instruction given at the instance of the plaintiff was as to the form of the verdict in case they found in favor of the plaintiff. The form thus prescribed was as follows: "We, the jury, find the issues in favor of the plaintiff, and assess the plaintiff's damages against the defendant at the sum of......dollars." The verdict rendered was precisely in the form suggested by the instruction, filling the blank with $2300, the amount of damages assessed; but it is claimed that this instruction is erroneous and the form of the verdict insufficient, because, the defendant's plea being "not guilty," the verdict should be "guilty" or "not guilty." Doubtless the appropriate verdict in a case of this kind, where the jury find for the plaintiff, is one of "guilty,"

but it can scarcely be doubted that the verdict actually rendered was tantamount to one of "guilty." The plea being a plea of "not guilty," the issue thus presented was whether the defendant was guilty or not guilty in manner and form as charged in the declaration, and the verdict finding the issue in favor of the plaintiff is necessarily a finding that the defendant is guilty.

Nearly all of the instructions asked on behalf of the defendant were given as asked, and complaint is now made only of the ruling of the court in refusing to give the defendant's ninth instruction as asked, and in giving it to the jury in a modified form. As asked it was as follows:

"The court instructs the jury that in case they find for the plaintiff they can only assess pecuniary damages for pecuniary loss,—that they cannot give any damages for the grief and mental suffering of the father and mother or any one else. The damages, if any, must be confined to the pecuniary loss which the evidence may show has been sustained. And if the evidence shows that said Frank Reardon was a minor, and fails to show he left a wife and child, if the jury find any damages they should, in making up their verdict, take into consideration the age of said Frank Reardon, and the fact that had he lived his father would, in law, be only entitled to his wages and earnings until he should become twenty-one years old. And the jury are further instructed that the plaintiff claims and avers in his declaration that said Frank Reardon was eighteen years and eleven months old, and cannot now claim he was younger, and his father would only be entitled to his earnings from the time of his death until he should have reached the age of twenty-one years. This fact should be considered by the jury in case they find any damages."

As given it was as follows:

"The court instructs the jury, that in case they find for the plaintiff they can only assess pecuniary damages

for pecuniary loss,—that they cannot give any damages for the grief and mental suffering of the father and mother or any one else. The damages, if any, must be confined to the pecuniary loss which the evidence may show has been sustained by the father and rest of kin, and should be such compensation, under the statute, as the jury may believe, from the evidence, is just and right."

We think no injury was done the defendant by the modification of the instruction. As asked it was objectionable in making unduly prominent the fact that the father of deceased, had the latter lived, would have been entitled to his wages up to the time of his majority; and no longer, and the jury might have been led to believe from the prominence thus given that fact, and the silence of the instruction as to the other considerations which might properly enter into the estimate of damages, that the only pecuniary loss which the father and the rest of the kin of the deceased sustained by his death was the loss of his wages during the period of a little over two years which would have elapsed before his attaining his majority. That the loss of the right to receive his wages until majority is not the only element of pecuniary loss, or the only thing to be considered by the jury in assessing damages, is settled by the repeated decisions of this court. *City of Chicago* v. *Keefe*, 114 Ill. 222; *Illinois Central Railroad Co.* v. *Slater*, 129 id. 91; *City of Chicago* v. *Scholten*, 75 id. 468; *Rockford, Rock Island and St. Louis Railroad Co.* v. *Delaney*, 82 id. 198.

Objection was made at the trial, and is still insisted upon, that the plaintiff was not a competent witness in his own behalf, and that the admission of his testimony was error. We think he was competent. The statute retains the common law disqualification, by reason of being a party to the suit or interested in the event thereof, in cases where the adverse party sues or defends as administrator of the deceased person, etc. Here, the plaintiff was himself suing as administrator of the de-

ceased person, and was competent to testify in his own behalf.

The point is made that the deceased and the other servants of the defendant through whose negligence he was killed were fellow-servants, and that the case is one in which the maxim *respondeat superior* cannot be invoked. Whether the relation of fellow-servants existed between them is a question of fact, which has been conclusively settled adversely to the defendant by the decision of the Appellate Court. No complaint is made of any rulings of the trial court on that point, in the instructions to the jury or otherwise, and therefore no question is presented in relation to that branch of the case which we can consider.

After carefully considering the case in the light of such suggestions as counsel have submitted in their briefs, we are unable to find any error in the record, and the judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*