### The Pioneer Reserve Ass'n v. Nathan A. Jones.

1. BENEFIT CERTIFICATE—*when action upon, should be brought.* Where the contract of insurance provides that action must be brought thereon within a certain period after the rejection of a claim thereunder, notice of rejection must be given by the society to the claimant before such period begins to run.

2. REJECTION OF CLAIM—*what not notice of.* Notice of rejection given to the local secretary of the society is not notice to the claimant, notwithstanding proofs of loss may have been forwarded through such secretary.

3. SUBORDINATE LODGE—*when agent of principal organization.* The subordinate lodge is the agent of the society and not of the claimant, notwithstanding proofs of loss may have been forwarded through its secretary.

4. CONDITION OF HEALTH—*proof of.* Non-expert witnesses who have had sufficient opportunities for observation are competent to testify as to the condition of health of a particular person.

5. OPENING STATEMENT OF COUNSEL—*when improper.* It is unprofessional and ground for reversal to call attention in an opening statement to collateral matters calculated to prejudice the jury; nor does the sustaining of objections to such improper statements repair the injury.

6. CONDUCT OF COUNSEL—*impropriety in the, in asking improper questions.* It is unprofessional and ground for new trial to seek, upon the examination of witnesses, by suggestive questions to get collateral matters before the jury; nor does the sustaining of objections to such questions repair the injury.

Assumpsit upon benefit certificate. Appeal from the Circuit Court of Logan County; the Hon. JOHN H. MOFFETT, Judge, presiding.

Heard in this court at the May term, 1903.   Reversed and remanded.
Opinion filed October 12, 1903.

S. P. ROBINSON and DUNN & KENNEY, for appellant.

CARL BEKEMEYER and BEACH, HODNETT & TRAPP, for appellee.

PER CURIAM.

This is an action in assumpsit, brought by appellee against appellant to recover upon a certificate of membership issued to Lulu G. Jones, by appellant, a benefit society organized under the laws of Illinois, in which appellee, the husband of said Lulu G. Jones, is named as beneficiary.

The general issue and several special pleas were filed. The trial resulted in a judgment against the defendant for $642.52 from which it appeals.

By its additional special plea, the defendant averred that the benefit certificate and the constitution and by-laws governing the benefit fund provide that no action shall be maintained or recovery had for any claim arising under said certificate, unless suit is commenced within six months from the time the claim is rejected by the board of directors of defendant; that plaintiff gave his death proofs to the local secretary of defendant, and that said secretary sent the claim and proofs of death to defendant; that its board of directors on September 9, 1901, rejected the claim, and on the following day notified said local secretary of its action; that plaintiff did not commence this suit until nearly eight months after the rejection of said claim.

Plaintiff demurred to said additional plea and the court sustained the demurrer.   Defendant then elected to abide by its said plea.

Inasmuch as the rejection of his claim by the board of directors gave rise to a duty upon the part of appellee to bring his suit within six months thereafter, notice to him by appellant of such rejection was necessary, and until such notice was given the limitation did not begin to run.   Association v. Loomis, 43 Ill. App. 599.

The action of the board of directors was a fact peculiarly

within the knowledge of appellant, and the rule is that where anything is to be done by one party on the performance of some act by the other, such other party must give notice of such act. Chase v. R. R. Co., 38 Ill. 215.

Appellant contends that notice of such rejection to the local secretary was notice to appellee, for the reason that proofs of death were sent by him through said secretary, and that this fact constituted the secretary his agent in the matter. There is no merit in this contention. The subordinate or local lodge and its officers were the agents of appellant (Coverdale v. Royal Arcanum, 193 Ill. 91) and not of appellee. The delivery of the proofs of death to the local secretary amounted simply to a delivery of the same to appellant and in no way made him the agent of appellee for any purpose.

The demurrer to the additional special plea was properly sustained.

The third special plea avers that Lulu G. Jones had rheumatism of the heart or heart disease, at the time of making application for membership in appellant, and that said disease caused her death. The tenth special plea avers that said Lulu G. Jones had heart disease prior to the time when she made application, etc.; that appellee knew that she had heart disease, and induced her to obtain certificates of membership from appellant and divers other fraternal benefit associations, naming them, for the use and benefit of appellee; that appellee was the beneficiary in all of said certificates; and that said certificates were obtained for the purpose of obtaining for appellee, fraudulently, a large sum of money, $12,000, etc.

In her application for membership in appellant society, executed August 30, 1900, Mrs. Jones stated that she had no injuries or disease that would tend to shorten her life; that she did not have heart disease, or any disease of the heart, and that she was in good health; and she warranted the truth of all statements therein made by her.

Within a period of about eighteen months thereafter she made application to and did become a member of four other

benefit societies similar to appellant, the aggregate of the insurance payable under said various memberships, including that in appellant, being $12,000.   In each of the certificates issued thereunder, appellee, her husband, was made the beneficiary.   All of said applications and all of the medical examiners' reports made thereunder were written by appellee.

The last of said certificates was issued four weeks prior to the death of Mrs. Jones, which took place in May, 1901, and that of appellant about five months prior to her death. Appellee is a physician and had knowledge of the physical condition of his wife.

The contention of appellee is that his wife died of acute endocarditis or heart disease; while appellant insists that the cause of her death was chronic endocarditis, which existed prior to and at the time she made application for membership to appellant, of which fact appellee was aware.

On the trial non-expert witnesses were permitted to give their opinions as to the condition of the health of Mrs. Jones. Appellant insists this was error, on the ground that none of said witnesses had sufficient acquaintance with her or sufficient opportunities to observe her, to qualify them to testify upon that question.

Non-expert witnesses having opportunities of observation may give their opinions as to the state of health of another. R. R. Co. v. Randolph, 199 Ill. 126.

The evidence shows that each of said witnesses had had more or less opportunities to observe the insured, and the frequency of their respective observations, or otherwise, affected only the probative force of their testimony.   The testimony referred to was competent and properly admitted.

The evidence upon the question as to the cause of the death of the insured, and as to her state of health when she made application, was exceedingly close and conflicting.   It was therefore especially important that the proceedings upon the trial should be so conducted as not to improperly prejudice the jury for or against either party.

In his opening statement to the jury, the senior counsel

for appellee used the following language: "Their own president," (meaning the president of the Pioneer Reserve Association) "A. O. Vonderlieth, supposing his life was insured for the benefit of his wife and children, died, and they did not get a dollar. They would not pay it." This statement made, as it was, by counsel learned in the law and experienced in the practice, could not have been made for any other purpose than to excite prejudice in the minds of the jury against appellant. The facts relating to the claim of the beneficiaries of Vonderlieth against appellant, if any existed, were in no way material to the issues in the case on trial, as counsel must have well known.

During the trial counsel for appellee called the widow of the said Vonderlieth, and in violation of the rules of evidence and proper practice, endeavored to substantiate the statements made by him in his opening. One Stone, the secretary of appellant, on cross-examination was asked the following questions, pertaining to the payment of the Vonderlieth claim: "When did he (Vonderlieth) die? How much did you pay on that policy? Did you pay any? Isn't it true you haven't paid his widow a dollar? If you haven't paid anything on Geo. W. Vonderlieth's policy will you tell the jury why?" Dr. Bullard, a witness called by appellant to show the condition of health of Mrs. Jones at the time and prior to her application for insurance, and the cause of her death, was asked by counsel for appellee the following question: "Are you the Dr. Bullard who said over in Mt. Pulaski that it was a good thing that President McKinley was killed?"

The remarks of counsel in the opening statement and the line of examination above detailed, were manifestly improper, reprehensible and unprofessional. That they tended unduly to prejudice the jury against appellant and the witness Bullard is so palpable as to render discussion unnecessary. Notwithstanding the trial court promptly sustained the objections of appellant thereto, its action was impotent. The purpose of the same was accomplished.

"When counsel indulge in practices so prejudicial to the

interests of that justice which it should be the delight of courts to uphold, they must abide the legitimate consequences." Porter v. Day, 44 Ill. App. 260.

For the reason indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*